**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANA MARINA HEYBOER,            )      NO. ED CV 12-7128-E
                               )
              Plaintiff,       )
                               )
     v.                        )      **MEMORANDUM OPINION**
                               )
CAROLYN W. COLVIN, COMMISSIONER )     **AND ORDER OF REMAND**
OF SOCIAL SECURITY,            )
                               )
              Defendant.       )
                               )
_____)

     Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY
ORDERED that Plaintiff's and Defendant's motions for summary judgment
are denied and this matter is remanded for further administrative action
consistent with this Opinion.


**PROCEEDINGS**

     Plaintiff filed a complaint on August 27, 2012, seeking review of
the Commissioner's denial of benefits.  The parties filed a consent to
proceed before a United States Magistrate Judge on September 20,

1  2012.  Plaintiff filed a motion for summary judgment on February 27,
2  2013.  Defendant filed a motion for summary judgment on May 13, 2013.
3  The Court has taken the motions under submission without oral argument.
4  See L.R. 7-15; "Order," filed August 29, 2012.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

8      On or about October 23, 2007, Plaintiff applied for disability
9  insurance benefits (Administrative Record ("A.R.") 109-13).  Plaintiff
10 asserts disability since May 1, 2005, based primarily on alleged back
11 problems stemming from two work-related injuries (A.R. 38-40, 109, 123-
12 24).  Plaintiff's last insured date was December 31, 2008 (A.R. 117).[1]
13 At a June 4, 2009 administrative hearing, Plaintiff testified that she
14 suffers from back pain of allegedly disabling severity (A.R. 43-45, 48-
15 54, 56-57).  At that time, Plaintiff was awaiting approval from the
16 Workers' Compensation Board for back surgery (A.R. 47).

18     On June 16, 2009, an Administrative Law Judge ("ALJ") found that
19 Plaintiff has the following "conditions of ill-being" significantly
20 limiting her ability to work:  "chronic low back syndrome; herniated
21 nucleus pulposus at L4-5; radiculopathy of the lumbar spine at L5; and

---

[1]     To be eligible for disability insurance benefits,
Plaintiff must have become disabled prior to the expiration of
her insured status.  See 42 U.S.C. § 416(i)(2)(C), 416(i)(2)(D),
416(i)(3)(A); 20 C.F.R. 404.131; see also Vertigan v. Halter, 260
F.3d 1044, 1047 (9th Cir. 2001); Flaten v. Secretary of Health
and Human Services, 44 F.3d 1453, 1458 (9th Cir. 1995) (where
claimants apply for benefits after the expiration of their
insured status based on a current disability, the claimants "must
show that the current disability has existed continuously since
some time on or before the date their insured status lapsed").

grade I spondylolithesis of L4 on L5" (A.R. 11 (citing 20 C.F.R. § 404.1520(c) (defining a "severe impairment"), and adopting treating physician's diagnosis at, e.g., A.R. 257)).  The ALJ determined that, notwithstanding these impairments, Plaintiff assertedly retains the residual functional capacity for a full range of sedentary work (A.R. 12, 14 (adopting in part consultative orthopedic examiner and state agency physician opinions at A.R. 174-86, 363-70)).  The ALJ applied the Grids to conclude that Plaintiff was "not disabled" through the date last insured (A.R. 16 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.19)).[2]   In finding Plaintiff able to work, the ALJ deemed not credible all statements by Plaintiff that were inconsistent with the residual functional capacity the ALJ found to exist (A.R. 14-15).   On September 21, 2009, the Appeals Council denied review (A.R. 1-3).

During an ensuing action in this Court, the parties stipulated to a voluntary remand (A.R. 519-22).  The Appeals Council then remanded the case to the ALJ, stating in particular that the opinion of Plaintiff's treating physician, (which the ALJ claimed was "not inconsistent" with Plaintiff's residual functional capacity for the full range of sedentary work) was in fact inconsistent with a capacity for the full range of sedentary work (A.R. 516).  The Appeals Council also indicated that the ALJ's credibility determination was insufficient (A.R. 516-17).   In accordance with the parties' stipulation, the Appeals Council ordered the ALJ to: (1) give further consideration to Dr. Shintaku's treating physician opinion and to request evidence or clarification from Dr.

---

[2]    If Plaintiff had been 50 years old on the date last insured (instead of 49 years old), the Grids would have directed that Plaintiff was disabled.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.10.

Shintaku, if necessary; (2) further evaluate Plaintiff's credibility; and (3) if warranted, obtain vocational expert opinion evidence (A.R. 517, 521-22).

On remand, the ALJ did not seek clarification or additional evidence from Dr. Shintaku.  The ALJ did order additional consultative examinations and did obtain vocational expert testimony via interrogatories (A.R. 460, 463, 470, 610-16 (vocational expert interrogatories), 628-37 (psychological evaluation and assessment), 640-50 (orthopedic consultation and assessment)).  The ALJ asserted that the new evidence supported a greater residual functional capacity, _i.e._, the ability to perform "light work" (A.R. 463 (citing A.R. 613 (hypothetical question)).[3]  Even so, according to the vocational expert, no light work jobs existed that Plaintiff could perform (A.R. 470 (citing A.R. 613-14)).

Despite having ordered and considered the new evidence, the ALJ rejected all of this evidence as allegedly irrelevant to the time period at issue (A.R. 463, 470).  The ALJ then largely repeated his 2009 ruling, finding that Plaintiff suffered from the same impairments, had the same residual functional capacity and, (again relying on Rule 201.19 of the Grids), was "not disabled" prior to the date last insured (A.R.

---

[3]     This assertion appears to be in error since the orthopedic consultant opined that Plaintiff would be able to carry 10 pounds occasionally and less than 10 pounds frequently, and could stand and walk less than two hours a day using a cane, with sitting for six hours per day with regular change of position.  See A.R. 643 (consultant's functional assessment); compare A.R. 646 (consultant's form indicating that Plaintiff would be able to stand two hours per day and walk two hours per day).

463-64, 469-70).  The Appeals Council again denied review (A.R. 457-59).

STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if:  (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

DISCUSSION

After the Appeals Council's remand order, the ALJ purported to state additional reasons for rejecting the opinion of Plaintiff's treating physician and for rejecting Plaintiff's credibility. Plaintiff asserts that these reasons are legally insufficient.  The Court agrees.

///
///
///
///

I.   **The ALJ Erred in the Evaluation of Evidence from Plaintiff's**

**Treating Physicians.**

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriquez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . .  This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physician opinions).  Even where the treating physician's opinions are contradicted,[4] "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriquez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.") (citation and quotations omitted).

In rejecting Dr. Shintaku's opinion, the ALJ once again stated that there appeared to be "general agreement between [the ALJ's] residual functional capacity assessment and that of the claimant's workers' compensation doctors, regarding the claimant's functional capacity" (A.R. 466).  The ALJ rejected Dr. Shintaku's finding that

---

[4]     Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

Plaintiff would have some postural limitations and would require a "sit/stand" option at work, asserting that these restrictions were:

> . . . inconsistent with the minimal findings on physical examination, such as negative straight-leg raising test, normal sensation and motor function, and no signs of atrophy.  These unremarkable physical examination findings are corroborated by equally minimal objective findings, such as negative electrodiagnostic findings of radiculopathy and imaging studies showing no neural impingement.  Indeed, Dr. Shintaku's limitations appear to be based on findings, such as tenderness and decreased range of motion in the lumbar spine, that are highly subjective.

(A.R. 466 (citing A.R. 187-362, 377-400)).  In light of the record and the ALJ's other findings, these stated reasons are legally insufficient.

The record shows that Dr. Shintaku treated Plaintiff at least monthly for her work-related injury from September 23, 2005, until at least May 27, 2009 (A.R. 188-254, 279-93, 382-86, 391-96, 403-24). During this time, Plaintiff complained of, inter alia, pain in her lower back radiating to her right leg, pain in her right hip and buttock, stiffness, pain when walking 10-15 minutes and from prolonged standing (A.R. 191, 194, 196-208, 213-16, 218, 221-25, 382-84).  At times, Plaintiff presented with a slow, deliberate antalgic gait, tenderness on palpation, and decreased range of motion (A.R. 191-92, 197, 203, 207, 209, 214, 391-93, 415-16).

By April 4, 2007, when it became clear that Plaintiff's medications (Celebrex, Vicodin and epidural injections (A.R. 193-94, 206-07, 212, 217, 221)) did not relieve her pain, Dr. Shintaku referred Plaintiff to Dr. Liceaga, a pain specialist (A.R. 283-85). Available MRI findings showed:  (1) Grade I spondylolisthesis of L4 on L5; (2) a 2.3 mm disc protrusion at L3-4 that effaces the thecal sac and produces bilateral neuroforaminal encroachment with encroachment on the L3 exiting nerve roots and bilateral facet arthropathy; (3) a 3.7 mm disc protrusion at L4-5 that effaces the thecal sac and produces bilateral neuroforaminal encroachment with encroachment on the L3 exiting nerve roots and bilateral facet arthropathy; (4) subtle disc bulges at T12-L1 through L2-3; and (5) disc desiccation throughout the lumbar spine and decreased disc height and osteophytes at L4-5 (A.R. 348-54 (April 28, 2006 MRI)).  Dr. Liceaga worked in conjunction with Dr. Shintaku, giving Plaintiff regular catheter-directed epidural injections for pain (A.R. 305-43, 387-90, 397-400, 425-46).[5]  At times, Plaintiff reported that the injections gave her some pain relief but, reportedly, the pain inevitably returned (A.R.

---

[5]     Dr. Liceaga's treatment records show that at times Plaintiff had positive straight leg raising, Bragard's and Kemp's tests (indicating lumbar radicular pathology and nerve root compression), and Patrick's tests (for sacroiliac joint problems), as well as decreased range of motion (A.R. 306, 313, 320, 325, 328, 331, 335, 338, 342).  See Taylor v. Commissioner of Social Sec., 2013 WL 1305291, at *3 nn.2-3 (W.D. Mich. Mar. 28, 2013) (defining Kemp's and Patrick's tests as testing lumbar spine facet joints and pathology of the hip joint or sacrum, respectively); Carroll v. Prudential Ins. Co. Of America, 2010 WL 3070187, at *7 n.11 (S.D. Ohio Aug. 5, 2010) (defining Kemp's test as diagnosing disc and radicular pathology); Dollard v. Astrue, 2008 WL 2186441, at *1 n.2 (W.D. Mo. May 23, 2008) (defining Bragard's test as indicating sciatica and spinal nerve root compression).

192-225, 382-84, 391-96, 406-18).  By January 7, 2009, Dr. Shintaku
had prescribed a cane for Plaintiff to assist in her ambulation (A.R.
415-16).

Plaintiff had a second MRI on October 1, 2007 (A.R. 274-75).  In
addition to the earlier findings, this MRI showed:  (1) degenerative
disc disease in comparison to the earlier study, with concentric
protrusion with posterior annular fissure abutting the traversing
nerve roots without significant compression or displacement; (2) mild
bilateral foraminal narrowing; (3) facet arthritis that had progressed
since the prior study; and (4) synovial cysts along the dorsal aspect
of the facet joints bilaterally, more prominent than in the previous
study (A.R. 274-75).

On August 6, 2008, Dr. Shintaku referred Plaintiff for a
consultation with Dr. Ali, a spine surgeon (A.R. 385-86).  Dr. Ali
stated that Plaintiff's symptoms appeared out of proportion to the
available diagnostic studies and ordered an updated MRI (A.R. 376).
This MRI, done on November 3, 2008, showed:  (1) advanced facet
arthropathy at L4-5 with bilateral posterior synovial cysts that were
mildly enlarged; (2) an inflammatory variant of degenerative facet
arthropathy; (3) the disc protrusion at L4-5 with annular tear,
///
unchanged; and (4) dessication at L4-5, unchanged (A.R. 379-80).[6]
Based on these findings, on November 20, 2008, Dr. Ali recommended

_____

[6]     An x-ray from October 2008 also showed degenerative
facet changes at the L4-5 and L5-S1 levels, with a 3-4 mm offset
at the L4-5 level that was somewhat more prominent on flexion
views (A.R. 381).

surgery, stating:


> [G]iven her symptoms have been debilitating to date and they
> seem to be correlating with the lateral recess stenosis and
> foraminal narrowing related to the grade I spondylolisthesis
> L4-5, I have recommended consideration for surgical
> treatment at this point.  She has failed all conservative
> treatments to date including physical therapy, rest, anti-
> inflammatory medications, and multiple lumbar epidural
> steroid injections.  Symptoms are radicular in nature and
> limit her activity to a debilitating degree.  Surgical
> treatment for her would include an anterior and posterior
> fusion including a minimally invasive posterior approach for
> the L4-5 level.


(A.R. 373-74).[7]  The ALJ did not expressly consider Dr. Ali's opinion that Plaintiff's symptoms limited her activity to a "debilitating" degree.  Nor did the ALJ ask Dr. Ali the doctor's opinions concerning Plaintiff's specific limitations.

///

///


Meanwhile, Dr. Shintaku was opining as he treated Plaintiff that she had significant functional limitations.  In December 2005, Dr. Shintaku opined that Plaintiff could do modified work limited to work not requiring bending, squatting, kneeling, stooping, prolonged

---

[7]   The record suggests that Plaintiff had her back surgery in 2009 (A.R. 641).

standing, stair climbing, or lifting over 10 pounds (A.R. 252).  From
January through April 2006, Dr. Shintaku opined that Plaintiff would
be "totally disabled" from work (A.R. 247-51).  From May through July
2006, Dr. Shintaku opined that Plaintiff could do modified work
requiring no bending and no lifting over 50 pounds (A.R. 244-46).
From August through September 2006, Dr. Shintaku once again opined
that Plaintiff could do modified work limited to work not requiring
bending, squatting, kneeling, stooping, prolonged standing or lifting
over 10 pounds, with the ability to sit, stand, and walk about as
needed to relieve pain (a "sit/stand option") (A.R. 240-43, 289, 296,
298).  From September 2007 through March 2008, Dr. Shintaku opined
that Plaintiff would be "totally disabled" (A.R. 228-39).  In April
2008, Dr. Shintaku stated that he thought Plaintiff could work if her
job requirements were primarily sedentary and would permit a sit/stand
option (A.R. 254).  From June through August 2008, Dr. Shintaku
believed Plaintiff again was "totally disabled" from work (A.R. 385-
86, 391-96).

        As previously quoted, the ALJ rejected Dr. Shintaku's postural
limitations and "sit/stand" limitations because these limitations
assertedly appeared to be based on Plaintiff's subjective complaints
and allegedly were inconsistent with the purportedly "minimal"
objective findings on examination (i.e., negative straight leg raising
tests, normal sensation and motor function, no signs of atrophy,
negative electrodiagnostic findings of radiculopathy, and imaging
studies showing no neural impingement) (A.R. 466).  The record does
not support the ALJ's stated reasoning.  As indicated above and as
discussed more fully below, it appears that Dr. Shintaku relied on

1  more than just Plaintiff's subjective complaints in formulating the
2  postural and "sit/stand" limitations.

4      First, Dr. Liceaga, who worked in conjunction with Dr. Shintaku
5  and copied Dr. Shintaku on all treatment records, made objective
6  findings on examination of positive straight leg raising, Bragard's,
7  Kemp's, and Patrick's tests, suggesting nerve root compression and
8  radiculopathy.  See Footnote 5, supra.  Second, while the latest
9  available electrodiagnostic findings from September 2006 were
10 considered "normal," earlier findings from January 2006 suggested
11 lumbosacral radiculopathy.  See A.R. 170-73.  The ALJ acknowledged
12 elsewhere in his opinion that Plaintiff suffered from severe
13 radiculopathy through the date last insured (A.R. 463).  Third, Dr.
14 Ali's interpretation of the latest available MRI was that Plaintiff's
15 radiculopathy and other symptoms were consistent with her lateral
16 recess stenosis and foraminal narrowing associated with her
17 spondylolithesis (A.R. 373).  Dr. Shintaku also reviewed this MRI and
18 opined that the findings were consistent with Plaintiff's symptoms
19 (A.R. 421).

21     If the ALJ had any question as to the basis of Dr. Shintaku's
22 opinion concerning Plaintiff's restrictions, the ALJ should have
23 developed the record on this point, as the Appeals Council previously
24 ordered.  See A.R. 517 (Appeals Council order citing 20 C.F.R. §
25 404.1512(e), effective through March 25, 2012, which provides that the
26 Administration "will seek additional evidence or clarification from
27 your medical source when the report from your medical source contains
28 a conflict or ambiguity that must be resolved, the report does not

contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); see also Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.  He could also have continued the hearing to augment the record.") (citations omitted).  The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests were considered, even where (as here) the claimant was represented by counsel.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).

The ALJ did not expressly consider, and the record does not clearly indicate, whether Dr. Shintaku's opinion of Plaintiff's limitations applied to any particular time period(s) prior to the date last insured (other than the reporting periods for the dates the limitations specifically were noted for Plaintiff's workers' compensation progress reports).  As these reports are interspersed with cryptic opinions that Plaintiff was "totally disabled" from her past relevant work (see A.R. 466 (ALJ discussing meaning of workers' compensation "total disability" findings)), the temporal scope of Dr. Shintaku's opinion regarding Plaintiff's functional capacity appears uncertain.

If the limitations Dr. Shintaku found to exist restricted Plaintiff during the relevant time period, the ALJ erred by relying exclusively on the Grids to find Plaintiff not disabled.  A person

requiring a "sit/stand option" is incapable of performing the full range of sedentary work.  <u>See</u> <u>Peterson v. Chater</u>, 96 F.3d 1015, 1016 (7th Cir. 1996); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1457 (9th Cir. 1984); <u>see also</u> A.R. 516 (Appeals Council acknowledging same in Plaintiff's case).  The Administration would have to consult a vocational expert to determine whether there existed a significant number of jobs Plaintiff could perform.  <u>See</u> Social Security Ruling 83-12 (noting that sit/stand option is not consistent with prolonged sitting contemplated by sedentary work; "in cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base"); <u>Auckland v. Massanari</u>, 257 F.3d 1033, 1036-37 (9th Cir. 2001) (sit/stand option requires vocational expert testimony since most sedentary jobs require sitting for most or all of the day); <u>see generally</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988) ("[T]he grids will be inappropriate where the predicate for using the grids – the ability to perform a full range of either medium, light or sedentary activities – is not present.").

**II.  <u>The ALJ Erred in the Evaluation of Plaintiff's Credibility.</u>**

Plaintiff argues that the ALJ failed to state sufficient reasons for discounting Plaintiff's credibility concerning her symptoms. Where, as here, the ALJ finds "medically determinable impairments [which] could reasonably be expected to cause the alleged symptoms" (A.R. 467), the ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings, supported in the record, to justify discounting such

testimony.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see

Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Varney v.

Secretary, 846 F.2d 581, 584 (9th Cir. 1988).[8]  Generalized,

conclusory findings do not suffice.  See Moisa v. Barnhart, 367 F.3d

882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be

sufficiently specific to allow a reviewing court to conclude the ALJ

rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit the claimant's testimony") (internal citations

and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208

(9th Cir. 2001) (the ALJ must "specifically identify the testimony

[the ALJ] finds not to be credible and must explain what evidence

undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The

ALJ must state specifically which symptom testimony is not credible

and what facts in the record lead to that conclusion."); see also

Social Security Ruling 96-7p.


    In the present case, the ALJ appeared to state five reasons for

finding less than fully credible Plaintiff's testimony regarding the

severity of her pain.  The ALJ stated:  (1) the objective medical

record assertedly did not fully corroborate Plaintiff's allegations of

disabling pain; (2) Plaintiff supposedly received only "conservative"

---

[8]    In the absence of evidence of "malingering," most
recent Ninth Circuit cases have applied the "clear and
convincing" standard.  See, e.g., Molina v. Astrue, 674 F.3d 1104
(9th Cir. 2012); Taylor v. Commissioner of Social Security
Admin., 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v.
Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v.
Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000)
(collecting cases).  In the present case, the ALJ's findings are
insufficient under either standard, so the distinction between
the two standards (if any) is academic.

treatment for pain; (3) there assertedly was no record evidence of
atrophy in Plaintiff's lower limbs; (4) Plaintiff supposedly did not
consistently report her pain as being as severe as she alleged in her
testimony; and (5) Plaintiff's reported daily activities assertedly
were consistent with the ability to do sedentary work, and not
consistent with her alleged degree of pain and her testimony that she
stopped cooking for her family (A.R. 467-68).  As discussed below,
these stated reasons are legally insufficient under the circumstances
of this case.


     With regard to stated reason (1), the absence of fully
corroborative medical evidence cannot form the sole basis for
rejecting the credibility of a claimant's subjective complaints.  See
Varney v. Secretary, 846 F.2d at 584; Cotton v. Bowen, 799 F.2d 1403,
1407 (9th Cir. 1986); see also Burch v. Barnhart, 400 F.3d 676, 681
(9th Cir. 2005) ("Burch") ("lack of medical evidence" can be "a
factor" in rejecting credibility, but cannot "form the sole basis").
If the ALJ's other four bases are insufficient, this first basis
cannot adequately support the credibility determination.


     With regard to stated reason (2), it is true that a
"conservative" course of treatment may sometimes properly discredit a
claimant's allegations of disabling symptoms.  See, e.g., Parra v.
Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, 552 U.S.
1141 (2008) (treatment with over-the-counter pain medication is
"conservative treatment" sufficient to discount the claimant's
testimony regarding allegedly disabling pain).  In the present case,
however, the ALJ's characterization of Plaintiff's treatment as

"conservative" is of dubious accuracy, given the fact that Plaintiff's treatment included prescription pain medication and repeated epidural injections. See, e.g., Salinas v. Astrue, 2012 WL 1400362, at *4 (C.D. Cal. Apr. 23, 2012) (epidural injections "suggests less conservative treatment"); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to categorize as "conservative" treatment including use of narcotic pain medication and epidural injections).[9]  While the ALJ cites to Dr. Ali's treatment note indicating that Plaintiff's symptoms appeared to be out of proportion to currently available diagnostic studies, as the Appeals Council observed, Dr. Ali found that Plaintiff's symptoms were consistent with an updated MRI and did necessitate surgery (A.R. 373. 516-17).  Dr. Ali did not find that Plaintiff required surgery based "primarily" on Plaintiff's subjective complaints, as the ALJ mistakenly claims. Compare A.R. 467 (ALJ decision) with A.R. 373 (Dr. Ali's report).

With regard to stated reason (3), there is no evidence in the record to support the ALJ's apparent supposition that an absence of atrophy would indicate that Plaintiff's symptoms are not as severe as she alleged.  See Lapierre-Gutt v. Astrue, 382 Fed. Appx. 662, 665 (9th Cir. 2010) (rejecting lack of evidence of atrophy as a reason for adverse credibility determination as not based on substantial evidence, where no medical evidence "suggests that high inactivity levels necessarily leads to muscle atrophy"); Valenzuela v. Astrue, 247 Fed. Appx. 927, 929 (9th Cir. 2007) (ALJ's adverse credibility

---

[9]     In November of 2008, Dr. Ali used the word "conservative" to characterize Plaintiff's previous treatments, but appeared to do so merely to distinguish those treatments from surgical intervention, which Dr. Ali then recommended (A.R. 373).

1    determination was not supported by substantial evidence where the

2    record was devoid of any medical testimony to support ALJ's finding

3    that absence of evidence of muscular atrophy indicated claimant's

4    symptoms were not as severe as alleged); but see Osenbrock v. Apfel,

5    240 F.3d 1157, 1165-66 (9th Cir. 2001) (upholding an ALJ's rejection

6    of a claimant's credibility where the ALJ made specific findings

7    including, but not limited to, a lack of atrophy).

8

9         With regard to stated reason (4), Plaintiff testified that since

10   2005 she felt pain in her lower back radiating to her right leg all

11   the time, and her pain level was between 9 and 10 on a scale of 1 to

12   10 (A.R. 48-49).  Treatment notes show that throughout her treatment

13   Plaintiff reported to Dr. Liceaga pain levels of 5-8 (A.R. 308), 9

14   (A.R. 313), 3-4 (A.R. 320), 4-6 (A.R. 321), 6 (A.R. 322), 7 (A.R.

15   328), 3 (A.R. 334), 6-8 (A.R. 335), 6 (A.R. 336, 341-42), 8-10 (A.R.

16   387, 448), 6 (A.R. 397), 10 (A.R. 425), 5 (A.R. 428), 0-1 (A.R. 431),

17   10 (A.R. 434), 8 (A.R. 437), 6 (A.R. 440), 4 (A.R. 443), and 3 (A.R.

18   451, 454).  These notes suggest that the injections Plaintiff was

19   receiving provided some relief from the pain and her pain levels

20   sometimes varied with her activity levels.  In none of the records

21   reporting Plaintiff's pain did Plaintiff claim to be pain free (id.).

22   The mere fact that Plaintiff's reports of pain varied over the course

23   of her treatment does not suggest that her pain testimony was

24   incredible.  See Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1988)

25   (where claimant "periodically advised her doctors when she was feeling

26   somewhat better," this was "unlikely behavior for a person intent on

27   overstating the severity of her ailments").  This reasoning for

28   rejecting Plaintiff's credibility is also unpersuasive in light of Dr.

Ali's determination that Plaintiff's epidural injections had failed to treat her pain effectively (A.R. 373).

With regard to stated reason (5), the ALJ relied on a check-box form reportedly completed by Plaintiff concerning activities of daily living (A.R. 468 (citing A.R. 205)). Specifically, the ALJ states that, supposedly consistent with the ability to do sedentary work, Plaintiff reportedly only had "some difficulty" climbing a flight of 10 stairs, sitting, running errands, doing light housework, and shopping (A.R. 468). The ALJ also claims that Plaintiff's check indication that she could "make a meal" "with much difficulty" was inconsistent with her testimony that she stopped preparing meals "for [herself] and others in the family" in May 2005 (A.R. 468; see A.R. 45). However, Plaintiff's testimony was not materially inconsistent with her report. Plaintiff did not indicate how often she actually performed any of the activities listed on the form. See A.R. 205. Further, having to struggle "with much difficulty" to "make a meal" after May 2005 is not necessarily inconsistent with having ceased to "prepare meals for [herself] and others in the family" after May 2005.

While a claimant's level of daily activities sometimes can constitute "clear and convincing reasons for discounting a claimant's credibility, Burch, 400 F.3d at 680-81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (claimant's testimony regarding daily domestic activities undermined the credibility of her pain-related testimony), the record is inadequate to support such a conclusion in this case. Plaintiff did not testify concerning the extent of her daily activities. See A.R. 44-45. Certainly, the record does not

1  suggest that Plaintiff at any time reported that she performed

2  activities that would translate to sustained activity in a work

3  setting on a regular and continuing basis for eight hours a day, five

4  days a week.  See Social Security Ruling 96-8p (defining scope of

5  residual functional capacity); see also Vertigan v. Halter, 260 F.3d

6  1044, 1049-50 (9th Cir. 2001) ("Vertigan") ("the mere fact that a

7  plaintiff has carried on certain daily activities, such as grocery

8  shopping, driving a car, or limited walking for exercise, does not in

9  any way detract from her credibility as to her overall disability");

10 Gallant v. Heckler, 753 F.2d 1450, 1453-55 (9th Cir. 1984) ("Gallant")

11 (fact that claimant could cook for himself and family members as well

12 as wash dishes did not preclude a finding that claimant was disabled

13 due to constant back and leg pain).[10]

14

15    The ALJ cites to additional evidence in the record of Plaintiff's

16 daily activities as assertedly inconsistent with disability and

17 supposedly showing that she does have the ability to perform work "if

18 _____

19    [10]    In Burch, 400 F.3d at 680, the Ninth Circuit upheld an
   ALJ's rejection of a claimant's credibility in partial reliance
20 on the claimant's daily activities of cooking, cleaning,
   shopping, interacting with others and managing her own finances
21 and those of her nephew.  In doing so, the Ninth Circuit did not
   purport to depart from the general rule that an ALJ may consider
22 daily living activities in the credibility analysis only where "a
   claimant engages in numerous daily activities involving skills
23 that could be transferred to the workplace."  Id. at 681.
   Undeniably, however, it is difficult to reconcile the result in
24 Burch (and the result in Stubbs-Danielson v. Astrue, 539 F.3d
   1169, 1175 (9th Cir. 2008)) from the results in cases like
25 Vertigan and Gallant.  Certainly, "the relevance of a claimant
   carrying on daily activities should be evaluated on a case-by-
26 case basis."  Bloch on Social Security § 3.37 (Jan. 2005).  In
   the present case, the record fails to show that Plaintiff's
27 purported activities are inconsistent with her allegedly
   disabling pain.
28

motivated" (A.R. 468).  On one occasion, Plaintiff reported that she cleaned her kitchen floor and was "paying for it" with "intolerable" pain (A.R. 387).[11]  On another occasion, Plaintiff reported that she "overextended" herself in assisting her husband in repairing their home deck (A.R. 397).  These isolated incidents do not suggest that Plaintiff could (or believed she could) perform work in a work setting on a regular and continuing basis for eight hours a day, five days a week.  See Social Security Ruling 96-8p.

## III. **Remand is Appropriate.**

Plaintiff requests that the Court remand the case for further proceedings or exercise its discretion to credit Plaintiff's testimony as true.  The "credit as true" rule Plaintiff seeks to invoke is not mandatory.  See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett") (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); but see Lingenfelter v. Astrue, 504 F.3d 1028, 1041 n.12 (9th Cir. 2007) (appearing to suggest that remand is not an option where the ALJ failed to state sufficient reasons for rejecting a claimant's excess symptom testimony); Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (appearing, confusingly, to cite Connett for the proposition that "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if

_____

[11]   The Appeals Council found the fact that Plaintiff had cleaned her floor was not sufficient to discredit Plaintiff's credibility (A.R. 517).

1  he had credited the claimant's testimony, we remand for a calculation

2  of benefits") (quotations omitted); see also Vasquez v. Astrue, 572

3  F.3d 586, 599-601 (9th Cir. 2009) (court need not "credit as true"

4  improperly rejected claimant testimony where there are outstanding

5  issues that must be resolved before a proper disability determination

6  can be made).   The record requires additional development before a

7  proper disability determination can be made.   The Court declines to

8  apply the non-mandatory "credit as true" rule under the circumstances

9  of this case.

10

11      The Ninth Circuit's decision in Harman v. Apfel, 211 F.3d 1172

12  (9th Cir.), cert. denied, 531 U.S. 1038 (2000) ("Harman") also does

13  not compel a reversal directing the payment of benefits.   In Harman,

14  the Ninth Circuit stated that improperly rejected medical opinion

15  evidence should be credited and an immediate award of benefits

16  directed where "(1) the ALJ has failed to provide legally sufficient

17  reasons for rejecting such evidence, (2) there are no outstanding

18  issues that must be resolved before a determination of disability can

19  be made, and (3) it is clear from the record that the ALJ would be

20  required to find the claimant disabled were such evidence credited."

21  Harman, 211 F.3d at 1178 (citations and quotations omitted).

22  Assuming, arguendo, the Harman holding survives the Supreme Court's

23  ///

24  decision in INS v. Ventura, 537 U.S. 12, 16 (2002),[12] the Harman

25  holding does not direct reversal of the present case.   Here, the

26

27      [12]   The Ninth Circuit has continued to apply Harman despite

28  INS v. Ventura.   See Luna V. Astrue, 623 F.3d 1032, 1035 (9th
    Cir. 2010); Vasquez v. Astrue, 572 F.3d at 597.

1  Administration must recontact Plaintiff's treating physicians

2  concerning "outstanding issues that must be resolved before a

3  determination of disability can be made."  Further, it is not clear

4  from the record that the ALJ would be required to find Plaintiff

5  disabled for the entire claimed period of disability were the opinions

6  of Plaintiff's treating physicians credited.  See Luna v. Astrue, 623

7  F.3d 1032, 1035 (9th Cir. 2010) (remand appropriate where the

8  improperly rejected treating physician opinion failed to identify a

9  disability onset date).

10

11                              **CONCLUSION**

12

13       For all of the foregoing reasons,[13] Plaintiff's and Defendant's

14  motions for summary judgment are denied and this matter is remanded

15  for further administrative action consistent with this Opinion.

16

17       LET JUDGMENT BE ENTERED ACCORDINGLY.

18

19            DATED: June 4, 2013.

20

21            _____/S/_____
                     CHARLES F. EICK
22            UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27  _____

28       [13]    The Court need not and does not reach any of the other
    issues raised by Plaintiff.